**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL ACTION NO. 4:09-CV-1884 |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| ELLERY A. CRISSMAN, II, et. al., | |
| Defendants. | |

## <u>MEMORANDUM</u>

Presently before the Court are two competing Motions for Summary Judgment between Defendant/Counterclaim Plaintiff DLJ and Plaintiff/Counterclaim Defendant United States. (Docs. 69 and 72). Also before the Court is a Motion for Summary Judgment by the United States against Defendant Perry Crissman. (Doc. 52). As Defendant Perry Crissman has failed to timely oppose that Motion, it will be granted. While the Court finds the United States's tax liens take priority over the alleged purchase money mortgage, issues remain as to the Stipulation between the parties and full summary judgment in favor of either party will not be granted.

## I. Background

This action concerns two competing claims to the proceeds of real property ("Property") loacted at 110 Piccadilly Road in Port Matilda, Pennsylvania. The Property is held in the names of Defendant Ellery Crissman and Defendant Penny L. Crissman (collectively, the "Crissman Defendants"). On September 29, 2009, the United States of

America ("United States") filed suit against the Crissman Defendants, DLJ Mortgage Capital, Inc. ("DLJ"), and other financial institutions that it deemed may have an interest in the Property. (Doc. 1). The civil action was brought by the United States "for the purpose of (a) reducing to judgment federal tax assessments against Defendants Ellery A. Crissman, II, and Penny L. Crissman; and (b) foreclosing federal tax liens upon certain real property and requesting that this Court order the sale of such real property from which proceeds may satisfy the Plaintiff's liens." (Doc. 1 at 2).

The instant motions concern only Defendant/Counterclaim Plaintiff DLJ and Plaintiff/Counterclaim Defendant United States. All other Defendant financial institutions have either been dismissed or have stipulated their claims subordinate to that of the United States. (Docs. 28, 29, 30, 47). The validity of the liens or their foreclosure is not at issue. Default judgment on tax liability was entered against Defendant Ellery Crissman (Doc. 51), and the United States has made a Motion for Summary Judgement against Defendant Penny L. Crissman which she has not opposed. (Doc. 52).

On March 8, 1997, the Crissman Defendants opted into an installment agreement to purchase the Property. However, a foreclosure action by IMC Mortgage Company (IMC) against the original owner caused the Property to be sold at a Sheriff's Sale on August 29, 2000. IMC was the successful buyer with a bid of $36,050.00. IMC assigned its successful bid to Defendant Ellery Crissman for $389,000.

The Crissman Defendants obtained title to the Property on August 29, 2000. On August 30, 2000, Defendant Ellery Crissman executed a mortgage on the Property with People's Choice Home Loans, Inc. ("People's Choice") for $419,200 (the "DLJ Mortgage"). Due to a dispute with the Centre County Sheriff, the Deed was ultimately recorded on

2

January 18, 2002.  (Doc. 70 at ¶ 26).  The mortgage was recorded with the Centre County Record of Deeds Office on June 28, 2002.  (Doc. 70 at ¶ 16).

The U.S. Department of Housing and Urban Development Settlement Statement ("HUD-1") indicates that Defendant Ellery Crissman paid a total of $524,000 for the property.  (Doc. 70-12 at 2, Ex. 12).  The document  also reflects that $389,000 went towards the payoff of the IMC mortgage.  (Doc. 70-12 at 2, Ex. 12).  DLJ maintains that the loan was a purchase money mortgage, executed in order to "enable the Crissman Defendants to purchase the property."  (Doc. 70 at ¶ 15).  The United States argues that there is no evidence that the proceeds of the mortgage were actually used to pay for the property.  (Doc. 76 at 8).

DLJ is the current holder of the DLJ Mortgage due to an assignment between People's Choice and DLJ dated May 14, 2008.  (Doc. 70 at ¶ 27).  The Crissman Defendants have since defaulted on the DLJ Mortgage.

The United States avers that the Secretary of the Treasury has properly assessed federal income taxes against the Crissman Defendants[1] as follows:

---

[1]The United States claims there were seven total federal tax liens against the Crissman Defendants.  (Doc. 76 at 20).  Four are at issue in this case.  Originally, the United States alleged that "[t]hree of the seven notices were properly recorded before DLJ's mortgage was recorded ('the 3 Prior Notices'). The remaining four notices of federal tax liens were recorded after DLJ's mortgage was recorded ('the 4 Subsequent Notices')."  (*Id.*)  This characterization appears to rely on the "Assessment Date" of the federal tax liens in relation to the execution date of the DLJ Mortgage (August 30, 2000).  Ordinarily, federal tax liens arise at the time of assessment. 26 U.S.C.A. § 6322. However, in this case, the date of recording controls. *See* 26 U.S.C.A. § 6323(a); *infra* section C.

| Year Ending | Assessment Date | Lien Recorded |
| --- | --- | --- |
| December 31, 1996 | July 13, 1998 | October 13, 2000 |
| December 31, 1997 | November 23, 1998 | October 13, 2000 |
| December 31, 1998 | June 19, 2000 | October 13, 2000 |
| December 31, 1999 | October 29, 2001 | February 25, 2002 |

(Doc. 73 at ¶ 4).  The Internal Revenue Service ("IRS") filed notices with the Prothonotary of the Centre County Court of Common Pleas regarding these assessments on the above-noted dates, included three additional notices in 2003, 2005 and 2007 regarding later assessments.  (Doc. 73 at ¶ 4-5).  None of these tax assessments have been satisfied.

As a result of the default on the DLJ Mortgage and competing federal tax liens, DLJ filed a civil foreclosure action against the Crissman Defendants and the United States in the Centre County Court of Common Pleas on November 1, 2007.  (Doc. 73 at ¶ 12).  At that time, the United States had "at least seven notices" of federal tax liens filed in Centre County against the Crissman Defendants.  (Doc. 73 at ¶ 14).

In a letter dated December 10, 2007, an attorney retained by DLJ made a demand against DLJ's title insurer for coverage based on the three contested federal tax liens.  (Doc. 72-6 at 3-4, Ex. 113).  That letter disclosed that they had "discovered a cloud on title" and that "there were [three] IRS liens which were recorded and now take priority over this mortgage."  (Doc. 72-6 at 2, Ex. 113).  These three liens are apparently in reference to the three tax assessments preceding the August 30, 2000 mortgage.

On December 26, 2007, Plaintiff DLJ Mortgage Capital, Inc. and Defendant United

4

States entered into a "Judgment by Stipulation" in reference to the above November 1 foreclosure action.  In relevant part, that Stipulation provided:

> That the federal lien(s) referred to in Plaintiff's Complaint in Mortgage Foreclosure is junior in time to Plaintiff's mortgage, that being dated August 30, 2000 and recorded on June 28, 2002 at Mortgage Book/Volume 1380, Page 201 in the Centre County Recorder of Deed's Office.

(Document 70-15 at 3, Ex. 15).

However, even following the Stipulation, DLJ continued to demand coverage from their title insurer, ultimately culminating in an action against the insurer.  There is no evidence that the Stipulation was ever raised in that action.  Additionally, DLJ applied to the IRS for a discharge of the tax liens.  (Doc. 72-18, Ex. 130).  The discharge application referred to and contained copies of the same federal tax lien documents as filed with the Judgement by Stipulation.  (Doc. 72-18 at 9-18, Ex. 130).  Notably, the application states that the foreclosure "cannot be prosecuted until the priority of the above-referenced Federal Tax Liens vis-a-vis the DLJ Mortgage is resolved."  (Id. at ¶ 260).  The application was denied by the IRS.

The Parties' arguments essentially boil down to: (1) whether DLJ holds a valid purchase money mortgage against other potential creditors; (2) if so, whether such a purchase money mortgage has priority over federal tax liens; and (3) whether the Judgment by Stipulation is controlling in the instant case.

Both motions for summary judgment have been fully briefed and are ripe for review. As such, the Court will address each in turn.

## II. Discussion

### A. Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* 2D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable

to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256–57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id.* (quoting *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## B. Validity of the Purchase Money Mortgage

### 1. Existence of a Purchase Money Mortgage

DLJ characterizes the DLJ Mortgage as a purchase money mortgage. In support of this, DLJ relies on the text of the mortgage itself and Defendant Ellery Crissman's testimony that he understood the DLJ mortgage to be such. (Doc. 71 at 14). Neither is sufficient evidence as a matter of law. For the reasons stated below, the existence of a purchase

7

money mortgage is not dispositive to the overall action.  However, the Court ultimately finds material issues of fact that preclude an ultimate finding on this issue at this stage.

In Pennsylvania, a purchase money mortgage is defined as a mortgage that is "taken by a mortgagee . . . to secure the repayment of money actually advanced by such person to . . . the mortgagor at the time the mortgagor acquires title to the property and used by the mortgagor at that time to pay all or part of the purchase price . . . ."  42 Pa. C.S.A. § 8141(1)(ii).  *See also  Keener v. Zoning Hearing Bd. Of Millcreek Tp.*, 714 A.2d 1120, 1121 n.1 (Pa. Cmwlth. 1998) ("A purchase money mortgage is a mortgage or security device taken back to secure performance of an obligation incurred in the purchase of the property.") (citing *Black's Law Dictionary* 1111 (5th ed.1979)); Restatement (Third) of Property (Mortgages) §7.2 (1997) (defining a purchase money mortgage as a mortgage where "the proceeds of the loan are used to . . . acquire title to the real estate).  Thus, a core element of a purchase money mortgage is that the secured funds actually go towards the purchase of property.

The United States argues that DLJ has failed to establish this fact: "DLJ offers no evidence of how any of the mortgage proceeds were used.  There is no check, no receipt, no acknowledgment of how the proceeds were used, and Ellery Crissman testified the HUD-1 was manipulated."  (Doc. 76 at 10).  The Court agrees that DLJ has not put forth sufficient evidence to compel summary judgement on this issue.  As this presents a genuine issue of material fact, summary judgement is not appropriate on this issue.

The United States points out that Defendant Ellery Crissman was unable to recall the ultimate purchase price of the Property, even when presented with the HUD-1, stating that he was "not sure how the numbers were manipulated.  The representative from Peoples Choice put the whole package together."  (E. Crissman Tr. 32:5-12, Doc. 76-3, Ex. 210).

Furthermore, a letter written by an attorney retained by DLJ states that "[i]t is unknown where the $389,000 which was supposed to pay Mr. Nace's insurance company ended up-but it certainly did not go to the foreclosing mortgagee." (Doc. 72-13 at 3, Ex. 121). The letter by DLJ's retained counsel alone presents a material issue. Conversely, however, the document assigning IMC's bid to Defendant Ellery Crissman, it acknowledges receipt of the $389,000 in consideration for the bid. (Doc. 70-10 at 3, Ex. 10).

While the existence of a purchase money mortgage presents special issues in the federal tax lien context, the ultimate resolution of this issue is not necessary for the ultimate resolution of this action. However, as issues of material fact remain on this issue, the Court will not grant summary judgment on the existence of a legitimate purchase money mortgage.

### 2. Recording of the Purchase Money Mortgage

The United States alleges that the failure to record the DLJ Mortgage for almost two years renders it wholly invalid as a matter of state law. (Doc. 74 at 10). After investigating the pertinent Pennsylvania statutes, the Court disagrees.

First, the United States relies on 42 Pa. Cons. Stat. § 8141 for the proposition that a purchase money mortgage recorded more than ten (10) days of its date is invalid. (Doc. 76 at 11). That provision provides for the "Time from which liens have priority," measuring: "[p]urchase money mortgages, from the time they are delivered to the mortgagee, if they are recorded within ten days after their date; otherwise, from the time they are left for record." 42 Pa. Cons. Stat. § 8141(1). However, DLJ is correct to assert that Section 8141(1) does not speak to the overall viability of purchase money mortgages, but to the calculation of dates for the purposes of priority. (Doc. 82 at 5). *JP Morgan Chase Bank v. Zellin*, No. 05-3469, 2007 WL 2876112, at *463 (Pa. Comm. Pl. March 1, 2007) (finding the effect of

section 8141 to extend purchase money mortgages a "10-day grace period").

The United States also relies on three other Pennsylvania statutes, 21 Pa. Stat. §§ 621, 444, and 351.  Section 351 ("Failure to Record Conveyance") merely establishes Pennsylvania as a race-notice recording system.  *See Ridings at Brandywine Assocs., LP v. Citizens Bank*, No. 08-2788, 2008 U.S. Dist. LEXIS 66568, *6-7 (D.N.J. Aug. 29, 2008) (finding "there can be no doubt that under § 351, Pennsylvania now operates under a race notice recording system").

Sections 621 and 444, however, present some confusion.  Section 621, adopted in 1715, provides generally that "[n]o deed or mortgage . . . shall be good or sufficient to convey or pass any freehold or inheritance . . . unless such deed be acknowledged or proved and recorded within six months . . . ."  21 Pa. Stat. § 621.  Similarly, Section 444 requires that all deeds and conveyances:[2]

> be recorded . . . within ninety days after the execution of such deeds or conveyance, and every such deed and conveyance that shall at any time after the passage of this act be made and executed in this commonwealth, and which shall not be proved and recorded as aforesaid, shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee for a valid consideration, or any creditor of the grantor or bargainor in said deed of conveyance for a valid consideration, or any creditor of the grantor or bargainor in said deed of conveyance . . . .

21 Pa. Stat. § 444.

The application of these statutes to the United States as a subsequent creditor will be explored below.  However, as an initial matter, the United States contends that these three statutes render the DLJ Mortgage "void as a matter of Pennsylvania law." (Doc. 74 at

---

[2]Mortgages are considered conveyances under Pennsylvania law. *Sovereign Bank v. Schwab*, 414 F.3d 450, 453 n.5 (3d Cir. 2005).

10).  Conversely, DLJ contends that "when §621, §444, and §351 are read together, as they must be, a deed or mortgage nor recorded within the time frames under §621 or §444 is not absolutely void, but is void only to extent necessary to protect the rights of a subsequent bona fide mortgagee or purchaser for value."  (Doc. 80 at 9 (italics removed)).  The Court finds that the law supports DLJ's interpretation.

The United States Bankruptcy Court for the District of New Jersey was previously presented with this same question.  *Brandywine Assocs., L.P. v. Citizens Bank (In re Bella Vista Assocs., LLC)*, 388 B.R. 99, 105 (Bankr. D.N.J. 2008).  Through a comprehensive historical analysis, that court concluded that "[b]y including a savings provision which gives priority to the instrument that is filed first, section 351 effectively returned the law to the pre-1893 amendment version of section 444."  *Id.* at 104.  This refers to an earlier version of section 444 that had a "savings clause," providing that untimely recordings were not automatically void, but void unless recorded before that of a subsequent purchaser.  *Id.* at 102.  The earlier version of section 444 essentially allowed for a race-notice filing system, and therefore the revised version of section 444 is to be interpreted in light of the fact that Pennsylvania has again reverted to such a system.  *Id.* at 104; *Roberts v. Estate of Pursley*, 718 A.2d 837, 841 (Pa. Super. Ct. 1998) ("we adopt the theory that sections 351 and 444 of Title 21 must be read together.").

Against this outcome, the United States brings to my attention *United States v. Craig*. 936 F. Supp. 298 (E.D. Pa. 1996).  Relying on section 444, that court found a failure to timely record for over nine months made the "transfer of the property [] plainly void."  *Id.* at 300.  Similarly, *Fisher v. Advanta Fin. Corp. (In re Fisher)*, 320 B.R. 52, 65 (E.D. Pa. 2005), found a mortgage avoidable in bankruptcy where it was recorded outside of the 90-day

period.  *Id.* ("On its face, the Mortgage was fraudulent and void because its recordation violated the clear mandate of 21 P.S. § 444.").  However, *Bella Vista* acknowledged both these holdings and found them both non-precedential and unpersuasive.  388 B.R. at 106. Notably, neither case made any "attempt to address the impact of subsequently enacted 21 P.S. § 351."  *Id.*

As such, the Court will adhere to *Bella Vista*, finding that the DLJ Mortgage is not void as a matter of Pennsylvania law due to its late filing.[3]

## C. Priority in Regard to Federal Tax Liens

### 1.  Priority Generally

DLJ asserts that a "purchase money mortgage is entitled to priority over a federal tax lien regardless of whether the mortgage was entered into before or after the federal tax lien was filed."  (Doc. 71 at 11).

*Slodov v. United States*, 436 U.S. 238 (1978), offers support for this assertion: "[T]he [Internal Revenue] Code and established decisional principles subordinate the tax lien . . . to collateral which is the subject of a purchase-money mortgage regardless of whether the agreement was entered into before or after filing of the tax lien."  *Id.* at 257-58.  This notion relies heavily on the fact that "[d]ecisional law has long established that a purchase-money mortgagee's interest in the mortgaged property is superior to antecedent liens prior in time."

---

[3]Aside from *In re Fisher*, 320 B.R. 52 (E.D. Pa. 2005), none of the cases cited by either party makes any reference to 21 P.S. § 621.  However, the analysis of section 621 in *Fisher* parallels the analysis of section 444, an analysis that the Court rejects.  As such, the Court finds section 621 is similarly "intended to protect subsequent mortgagees and purchasers from injuries caused by secret pledges of property."  *Land v. Commonwealth, Pa. Hous. Fin. Agency*, 101 Pa. Commw. 179, 184 (Pa. Commw. Ct. 1986) ("Clearly, Pennsylvania's recording laws do not render invalid an unrecorded interest in land.").

*Id.* at 259 n.23.  "The purchase-money mortgage priority is based upon recognition that the mortgagee's interest merely reflects his contribution of property to the taxpayer's estate and therefore does not prejudice creditors who are prior in time."  *Id.*

The United States maintains that *Slodov* is "factually inapposite" (Doc. 83 at 12), but the Court finds it clear, on point, and relied on by subsequent courts.  *See e.g., United States v. Davoli*, 2006 U.S. Dist. LEXIS 95770 (W.D. Pa. 2006) (relying on *Slodov* for the proposition that a valid purchase money mortgage would  "arguably . . . be entitled to priority over the earlier filed Notice of federal tax lien.").

However, the United States is correct to point out that *Slodov* maintains that the "basic priority rules for tax liens are established by 26 U. S. C. § 6323."  436 U.S. at 257, n.20. Additionally, the United States turns the Court's attention to IRS Revenue Ruling referenced in *Slodov*, substantiating DLJ's priority argument, but noting the further requirement that a purchase money mortgage would need to be "valid under local law" in order to assert priority. Rev. Rul. 68-57, 1968-1 C.B. 553, 1968 WL 15409.  In this, the United States argues that *Slodov* "does not address the failure of a purchase money mortgagee to perfect its interest under state law.  It does not address these issues, because § 6323 provides that those issues are controlled by state law."  (Doc. 83 at 10).

The Court accepts the invitation to follow *Slodov* and agrees that, generally, a valid purchase money mortgage can assert priority under 26 U. S. C. § 6323 against an earlier filed federal tax lien, provided it would be able to do so as a function of state law.  The relationship between section 6323 and Pennsylvania law is set out below.

### 2. Exceptions to Priority

The United States's most persuasive argument is that the IRS tax liens are actually

subsequent to the DLJ Mortgage.  In other words, the United States argues that it is an intervening creditor.  (Doc. 83 at 2).

This characterization requires an examination of the relative priorities and applicable federal law.  While state law determines the nature of a particular property interest, federal law controls the issue of priority in regards to federal tax liens.  *Aquilino v. United States*, 363 U.S. 509, 513-14 (1960).  "Absent provision to the contrary, priority for purposes of federal law is governed by the common-law principle that 'the first in time is the first in right.'"  *United States by & ex rel. IRS v. McDermott*, 507 U.S. 447, 449 (U.S. 1993)(citing *United States v. New Britain*, 347 U.S. 81, 85, (1954)).

Specifically, federal tax liens "arise at the time the assessment is made."  26 U.S.C. § 6322.  However, such a lien is not valid "as against any . . . holder of a security interest . . . until notice thereof . . . has been filed by the Secretary."  26 U.S.C. § 6323(a).  Such a security interest is defined as:

> any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

26 U.S.C. § 6322(h)(1).

Section 6323(c) offers an exception to the general rule, offering protection for certain commercial transactions against later-filed tax liens, including mortgages on real property.  26 U.S.C. § 6322(c)(2)(C)(iii).  However, such transactions are only protected to the extent that they would be "protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation."  .  26 U.S.C. § 6322(c)(1)(B).  Therefore,

14

while first in time is the general rule, the exceptions under section 6323 look to the priority requirements of state law.

In interpreting the extent of this protection, the Third Circuit held a tax lien valid against a subsequent purchaser who failed to timely record his deed. *Moco Invs., Inc. v. United States*, 362 Fed. Appx. 305, 309 (3d Cir. N.J. 2010).  Under New Jersey law, also a race-notice jurisdiction, a subsequent purchaser failed to record his deed until a month after the IRS recorded its federal tax lien. *Id.*  Relying on the New Jersey law, that court concluded that the buyer's "interest in the property was not 'valid . . . against [a] subsequent purchaser[] without actual notice' until it recorded its deed." *Id.* at 309 (quoting 26 U.S.C. § 6323(h)(6)).  As the subsequent buyer did not qualify as purchaser "valid under local law" under section 6323,  the federal tax lien therefore had priority. *Id.*

The same result applies in this case.  The DLJ Mortgage is seeking protection against a later filed tax lien under section 6323.  It is clear that DLJ had an unrecorded interest in the Property as of August 30, 2000, an interest that remained unrecorded until ultimately filed on June 28, 2002.  As noted above, 42 Pa. Cons. Stat. § 8141 provides for the "Time from which liens have priority," and directs that: "Purchase money mortgages, from the time they are delivered to the mortgagee, if they are recorded within ten days after their date; otherwise, from the time they are left for record." 42 Pa. Cons. Stat. § 8141(1).  As such, even assuming the DLJ Mortgage was a purchase money mortgage, it would have priority under state law only from the time it was left for record, June 28, 2002.[4]

Therefore, as the federal statute sets out priority as a function of state law,  the

---

[4]Even if it were another form of mortgage, priority would be measured in the same fashion, "from the time they are left for record."  42 Pa. Cons. Stat. § 8141(2).

Pennsylvania statutory obligations on filing apply.  As noted above, Pennsylvania, as a race-notice jurisdiction, would expose the DLJ mortgage to other judicial creditors until properly filed, including federal tax liens.  DLJ effectively concedes this conclusion in stating that "a mortgage recorded outside the time frames set forth in 21 P.S. §§ 444 and 621 is not void entirely, but is void only to the extend to protect the rights of subsequent bona fide mortgagees and purchasers for value."  (Doc. 80 at 15 (emphasis omitted)).

Pursuant to 26 U.S.C. § 6323(a), the federal tax liens were effectively subsequent to the DLJ Mortgage.  The United States filed four federal tax liens on October 13, 2000 and February 25, 2002, after the DLJ Mortgage was executed, but before it was recorded.  As the filing date per 42 Pa. Cons. Stat. § 8141(1) was June 28, 2002, it is clear the federal tax liens have qualify as a subsequent liens holder under Pennsylvania law, and are thus entitled to priority under 26 U.S.C. § 6323(c).  As there are no material facts in dispute in the application of these statutes, the Court will grant summary judgment in favor of the United States as to priority as to the four federal tax liens filed on October 13, 2000 and February 25, 2005.

**D. Applicability of the Stipulation**

Finally, DLJ argues that the December 26, 2007 stipulation between the parties should be controlling in the instant action.  For the reasons set out below, the Court finds a material dispute exists as to this issue.

Ordinarily, a stipulation on point should be controlling.  "A cornerstone principle of contract interpretation provides that where the words of the document are clear and unambiguous, we must 'give effect' to the language.'"  *Tindall v. Friedman*, 2009 PA Super 50, P20 (Pa. Super. Ct. 2009) (citing *Standard Venetian Blind Co. v. American Empire Ins.*

*Co.*, 503 Pa. 300, 469 A.2d 563, 566 (Pa. 1983).   However, it is also "an established principle of contract construction that 'subsequent conduct of the parties, course of performance, is an aid to interpretation.'"   *Tindall*, 2009 PA Super 50, P21 (Pa. Super. Ct. 2009) (citing *Herzog v. Herzog*, 2005 PA Super 393, 887 A.2d 313, 316 (Pa.Super. 2005)).

On its face, the plain meaning of the Stipulation is rather clear.  It says only "that the federal lien(s) referred to in Plaintiff's Complaint in Mortgage Foreclosure is junior in time to Plaintiff's mortgage." (Document 70-15 at 3, Ex. 15).  In fact, DLJ's complaint in that matter contained all of four of the federal tax liens at issue in this case.  Thus, the plain meaning of the statement would seem to expressly encompass the very federal tax liens at issue here. Instead, the United States urges the Court to abandon the plain language of the Stipulation and determine that the parties did not intend it to apply to the three earliest federal tax liens based on the actions of the parties.  (Doc. 74 at 23).

As an initial matter, the United States points out that DLJ's actions appear not to have consistently relied on its purported understanding of the Stipulation.  Specifically, DLJ's perseverance in its title insurance claim, the lawsuit demanding such coverage, and applying to the IRS for a tax discharge evidence a faltering reliance on the Stipulation and raise a material issue as to DLJ's true interpretation.

The United States further argues that the Stipulation only makes sense when interpreted as to only the federal tax liens recorded after the mortgage was executed.  (Doc. 76 at 20-21).  As noted in footnote one, *supra*, this argument is based on the assumption that the liens arose at the time in which they were assessed.  However, as explained above, the liens only became operable against DLJ's potential purchase money mortgage after they were filed, which occurred after the execution of the DLJ Mortgage.   Therefore, this

17

argument fails.   In light of this proper analysis, the Stipulation still "makes sense" when applied to all of the tax liens.   As such, the Court agrees that the Stipulation is facially applicable to the four federal tax liens in question.

The application of the Stipulation is a factual dispute.   The United States argues that the "issue is a red herring because, as explained above . . . federal law–not merely whether liens are 'junior in time'–governs priority in this case."   (Doc. 74 at 18 (emphasis omitted)). While it is true that federal law controls, the above analysis demonstrates that federal law turns, to an extent, on the relative timing of the two competing claims.   Thus, to stipulate some of the claims as "junior in time" would potentially have an effect under the applicable federal law.   As such, the Court will reserve judgement on the applicability of the Stipulation noting the issues of material fact listed above.

## E.  Foreclosure and Sale

The United States requests foreclosure on its tax liens for tax years 1996, 1997, 1998 and 1999 pursuant to 26 U.S.C. § 7403.   This Motion is unopposed in as much as DLJ contests only the priority in which the proceeds of such a sale would be divided.   In light of the valid tax assessments made against the Crissmans, this order granting summary judgement against Defendant Penny Crissman, and default judgement having been entered against Defendant Ellerty Crissman (Doc. 51), the Court will grant foreclosure and sale to apply the proceeds to the Crissmans Defendant's tax liabilities.

### III. Conclusion

Summary judgment against Defendant Perry Crissman will be granted for failure to timely oppose.   Additionally, the Court will grant foreclosure and sale to apply the proceeds to the Crissmans Defendant's tax liabilities.   As for the DLJ Mortgage, even assuming the

18

existence of a purchase money mortgage, the United States has priority as purely a matter of federal law.  However, there are factual issues to be resolved as to the applicability of the Stipulation as to which reasonable jurors could disagree.  In light of this, summary judgement in favor of either DLJ or the United States is inappropriate.

An appropriate order follows.


 September 27, 2011                                       /s/ A. Richard Caputo
Date                                                                   A. Richard Caputo
                                                                          United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL ACTION NO. 4:09-CV-1884 |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| ELLERY A. CRISSMAN, II, et. al., | |
| Defendants. | |

## ORDER

**NOW**, this 27th day of September, 2011, **IT IS HEREBY ORDERED** that:

1) The United States's unopposed Motion for Partial Summary Judgement against Defendant Penny Crissman (Doc. 52) is **GRANTED** without a merits analysis.

2) The United States's Motion for Summary Judgement (Doc. 72) is **GRANTED** in that the United States has valid and subsisting tax liens that attached to the Real Property located at 110 Piccadilly Road, Port Matilda, Centre County, Pennsylvania (" the "Property"); that those tax liens be and are foreclosed; that the United States may sell the Real Property in accordance with a separate Order to be entered by the Court.

3) The United States is directed to submit such an appropriate order for sale of the Property to the Court within twenty-one (21) days.

4) The United States's Motion for Summary Judgement (Doc. 72) is **GRANTED** in respect to its assertion of priority against Defendant/Counterclaim Plaintiff DLJ Mortgage Capital, Inc. as a general matter of law.

5) The United States's Motion for Summary Judgement (Doc. 72) is **DENIED** in respect to its assertion that the Stipulation between the parties does not control the issue of lien priority in this specific instance.

6) The Motion for Summary Judgment of Defendant/Counterclaim Plaintiff DLJ Mortgage Capital, Inc. (Doc. 69) is **DENIED**.

7)    The Defendant/Counterclaim Plaintiff DLJ Mortgage Capital,
      Inc.'s Counterclaim for Declaratory Relief (Doc. 21) is **DENIED**.

                /s/ A. Richard Caputo
               A. Richard Caputo
               United States District Judge