IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL ACTION NO. 4:09-CV-1884 |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| ELLERY A. CRISSMAN, II, et. al., | |
| Defendants. | |

## MEMORANDUM

Before the Court is Defendant/Counterclaim Plaintiff DLJ Mortgage Capital, Inc.'s Motion for Reconsideration (Doc. 94) of the Court's October 14, 2011 Order directing the sale of real estate located at 110 Piccadilly Road, Port Matilda, Pennsylvania (Doc. 93). For the reasons explained below, the Motion will be granted in part and denied in part.

### Discussion

A motion for reconsideration is governed by Rule 59(e) of the Federal Rules of Civil Procedure, which allows a party to move to alter or amend a judgment within twenty-eight days of entry. FED. R. CIV. P. 59(e). "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985) (citation omitted). A judgment may be altered or amended if the party seeking reconsideration establishes at least one of the following grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood*

*Café, by Lou Ann, Inc., v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999). "A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Ogden v. Keystone Residence*, 226 F.Supp.2d 588, 606 (M.D. Pa. 2002). "[R]econsideration motions may not be used to raise new arguments or present evidence that could have been raised prior to the entry of judgment." *Hill v. Tammac Corp.*, No. 05 1148, 2006 WL 529044, at *2 (M.D. Pa. Mar. 3, 2006). Lastly, the reconsideration of a judgment is an extraordinary remedy, and such motions should be granted sparingly. *D'Angio v. Borough of Nescopeck*, 56 F.Supp.2d 502, 504 (M.D. Pa.1999).

DLJ Mortgage Capital, Inc. ("DLJ") asks that the Court modify its October 20th Order so that it would allow the United States and DLJ to jointly set the minimum bid on the property, with the court to set the minimum bid in the event of disagreement. As the ultimate priority between these two competing liens has not yet been determined, the Court will grant DLJ's Motion to participate equally in setting the minimum bid amount. Furthermore, the Court will make clear that DLJ is granted the right to bid at the sale. However, to the extent DLJ requests permission to place a credit bit on the property, the Court will deny DLJ's Motion. Though DLJ requests "the exact same right to credit bit at any sale of the property that the United States enjoys," (Doc. 95 at 3), the Court will clarify in its revised order that neither party shall be allowed to credit bit at the property sale. Finally, it will also be clarified that DLJ is not required to maintain fire and casualty insurance on the real property unless DLJ or its agents acquire possession thereof.

**Conclusion**

For the reasons stated above, Defendant/Counterclaim Plaintiff DLJ Mortgage Capital, Inc.'s Motion for Reconsideration (Doc. 94) will be granted in part and denied in part. A revised version of the Court's October 20th Order follows.

November 22, 2011
Date

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 4:09-cv-01884-ARC |
| ) | |
| vs. ) | (Judge Caputo) |
| ) | |
| ELLERY A. CRISSMAN, II, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

NOW, this 22nd day of November, 2011, **IT IS HEREBY ORDERED** that the Court's Order dated October 14, 2011 is revised to **ORDER** that:

1. The Internal Revenue Service, through its Property Appraisal and Liquidation Specialist ("the PALS"), is authorized under 28 U.S.C. §§ 2001 and 2002 to offer for sale at public auction and to sell the property located at 110 Piccadilly Road, Port Matilda, Centre County, Pennsylvania ("the Real Property"), and more fully described in public records as follows:

> ALL that certain messuage, tenement and tract of land situate, lying and being in the Township of Patton, County of Centre, and State of Pennsylvania, being Lot No. 26 as shown on the Saddle Rock Final Subdivision Plan, Phase 3, dated January 20, 1992, by Penn Terra Engineering, Inc., State College, PA, as shown on that plan of survey Recorded in Centre County Plat

Book 46, pages 150 and 151 being bounded and described as follows, to wit:

BEGINNING at an iron pin lying in a southerly R/W of Piccadilly Road (50'R/W) and being a northerly corner of Lot 25; thence along Lot No. 25, S 00°08'51"E, 556.23 feet to an iron pin, being a westerly corner of Lot No. 25 and lying in a northerly line of Lot No. 15 of Saddle Rock Subdivision, Phase 2 (P.B. 45. pg.147); thence along said lands, N 70°08'26"W, 135.99 feet to an iron pin being a Common corner of Lot No. 15 and lots No. 14R and 27; thence along Lot No. 27, N25°06'26"W, 482.15 feet to an iron pin, being a northerly corner of Lot No. 27 and lying in a southerly RW of Piccadilly Road (50'R/W); thence along the Piccadilly Road R/W, along a curve to the right, having a chord bearing of N66°19'29"E, a chord distance of 178.10 feet, a radius of 975.00 feet, and an arc distance of 178.35 feet to an iron pin; thence continuing along said R/W, along a curve to the right, having a chord bearing of N89°20'44"E, a chord distance of 167.95 feet, a radius of 275.00 feet, and an arc distance of 170.68 feet to an iron pin, being the place of beginning; containing 2.827 acres.

Lot No. 26 is subject to a 10' wide Utility Easement along its street frontage and a 20' Wide Utility Easement traversing through its southerly boundary.

BEING known as Centre County Uniform Parcel Identifier Number 18-01-063.

BEING the same premises which Gary A. Fowler and Inga V. Fowler, by Deed dated November 7, 1996 and recorded in the Office of the Recorder of Deeds of Centre County on November 15, 1996, in Deed Book Volume 899, Page 342, granted and conveyed unto Kirk L. Nace.

Being known as Centre County Uniform Parcel Identifier Tax Parcel Number 18-1/63.

2.  The PALS is authorized to have free access to the Real Property and to take all actions necessary to preserve the Real Property, including, but not limited to, retaining a locksmith or other person to change or install locks or other security devices on any part of the property after the notice given in paragraph 17, until the Deed to the Real Property is delivered to the ultimate purchaser.

3.  The sale of the Real Property shall pass title to the Real Property free and clear of liens or interests of the defendants and of the United States, without the right of redemption.

4.  The sale of the Real Property shall be subject to building liens, if established, all laws, ordinances, and governmental regulations (including building and zoning ordinances) affecting the Real Property and any easements and restrictions of record, if any.

5.  The Real Property shall be sold by public auction, scheduled at the discretion of the PALS. The auction shall take place within Centre County, Pennsylvania, either on the premises of the Real Property or at any other place in accordance with the provisions of 28 U.S.C. §§ 2001, 2002.

6. The time and place for the sale of the of the Real Property is to be announced by the PALS.

7. The sale of the Real Property shall be advertised once each week for four consecutive weeks preceding the time fixed for such sale in a daily newspaper of general circulation in Centre County, Pennsylvania and by any other notice that the PALS may deem appropriate. The notice(s) of sale shall contain a description of the Real Property to be sold and shall contain the terms and conditions of sale as provided in this Order.

8. PALS and DLJ Mortgage Capital, Inc. shall jointly set the minimum bid. In the event that the two parties cannot agree on a minimum bid, the Court shall establish the minimum bid. If the minimum bid is not met or exceeded, the PALS is authorized to hold a new public sale under substantially similar terms and conditions as set forth in this Order and, if necessary, to reduce the minimum bid.

9. No bid on the Real Property (except by the United States) shall be accepted unless the same is accompanied by a certified or cashier's check payable to the "Clerk, U.S. District Court" for no less than ten percent (10%) of the amount of the bid. Before being permitted to bid at

the sale, bidders shall display to the PALS proof that they are able to comply with this requirement. No bids will be received from any person who has not presented proof that, if they are the successful bidder, they can make the deposit required by this Order.

10. PALS and DLJ Mortgage Capital, Inc. shall be entitled to place bids on the Real Property at the sale. If either party does purchase the Real Property at the sale, neither shall be allowed to offset their secured claim against the purchase price (i.e. "credit bid").

11. The balance of the purchase price for the Real Property shall be delivered to the PALS within thirty (30) days after the date the bid is accepted. Payment shall be by a certified or cashier's check payable to the "Clerk, U.S. District Court." If the bidder fails to fulfill this requirement, the ten percent (10%) deposit shall be forfeited and shall be applied to cover the expenses of the sale, with any amount remaining to be distributed according to paragraph 14. In this event, the property affected shall again be offered for sale under the terms and conditions of this Order.

12. The Clerk of Court is hereby ORDERED to accept checks for payment of the purchase price of the Real Property, to deposit and

maintain such funds in the Registry of the Court until the Court orders their distribution.

13. No later than thirty (30) days after the PALS receives the balance of the purchase price for the Real Property, the United States, through its counsel, shall file a report of sale with the Court, together with a proposed Order confirming the sale and a proposed deed.

14. Upon confirmation of the sale of the Real Property (and receipt of full payment), the PALS shall execute and deliver a Certificate of Sale and Deed, conveying the property to the purchaser(s). Upon confirmation of the sale, all interests in, liens against, or claims to the Real Property held by the plaintiff, any defendant, and any successors in interest or transferees to those parties will be extinguished. The Centre County, Pennsylvania, Recorder of Deeds shall proceed to record the Deed in favor of the purchaser(s). The responsibility for recording the Deed and the payment of all costs, fees, and taxes of whatever kind relating to the recording of the deed shall be borne by the purchaser(s) as a term and condition of sale.

15. After confirmation of the sale of the Real Property and upon the Court's determination of the relative priority of claims to proceeds

from such sale, which is currently set for January 2012, the Court will issue an order directing the Clerk to distribute the sale proceeds from the Court's Registry.

16. The PALS, however, shall be entitled to recover from the proceeds from sale of the Real Property the costs and expenses associated with the sale of the Real Property, including payment of property taxes which encumber the Real Property.

17. Until the Real Property is sold by the PALS under this Order, defendants Ellery Crissman, Penny Crissman, and DLJ Mortgage Capital, Inc. shall take all reasonable steps necessary to preserve the Real Property (including all improvements, fixtures, and appurtenances) in its current condition including, without limitation, maintaining fire and casualty insurance on the Real Property at their own expense. DLJ Mortgage Capital, Inc., however, is not required to maintain fire and casualty insurance on the Real Property unless and until DLJ Mortgage Capital, Inc. or its agents acquire possession of the Real Property. All defendants named in this action shall not commit waste against the Real Property, nor shall they cause or permit anyone else to do so. All defendants named in

this action shall not do anything that tends to reduce the value or marketability of the Real Property, nor shall they cause or permit anyone else to do so. All defendants named in this action shall take no action which may tend to deter or discourage potential bidders from participating in the public auction.

18. All persons occupying the Real Property shall permanently leave and vacate the premises upon receiving a thirty (30) day notice from the PALS, taking with them their personal property but leaving all improvements, buildings, fixtures, and appurtenances to the Real Property, and deliver to the PALS the keys to the Real Property. If any person fails or refuses to vacate any of the Real Property by the time specified in this Order, the United States Marshal's Office is authorized to take whatever action it deems appropriate to eject and remove such person from the premises of the Real Property. If any person fails or refuses to remove personal property, such property is deemed forfeited and abandoned, and the PALS is authorized to dispose of such personal property in any manner it deems appropriate, including, but not limited to, the sale of such personal property. The proceeds of the sale from any such personal

property shall be applied first to the expenses of sale, and then remitted to the plaintiff to be applied toward defendants Ellery and Penny Crissman's unpaid federal income tax liabilities. Other than the expenses of the sale of abandoned personal property, any costs incurred or associated with a person's failure or refusal to vacate the Real Property or to remove personal property therefrom, shall be administrative costs of the sale and shall be recovered by PALS from the proceeds of the sale.

19. This order of sale shall act as a special writ of execution against the Real Property, and no further orders or processes from the Court shall be required.

Entered: _____     _____
                              UNITED STATES DISTRICT JUDGE